UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
2015 DEC 28 P 1:49
S. DISTRICT COURT
D. OF ALABAMA

| | |
|---|---|
| TALLADEGA COUNTY COMMISSION, a governmental corporation, Robbie Angles, Lori Angles, Angela Boozer, and Thomas D. Martin, individuals<br>　　Plaintiffs<br><br>v.<br><br>CITY OF LINCOLN, a municipal corporation, Luther J. Strange, III, Attorney General of the State of Alabama, Robert Bentley, Governor of the State of Alabama, Julie P. Magee, Alabama Commissioner of Revenue, Thomas L. White, Jr., Comptroller of the State of Alabama<br>　　Defendants | CV-15-BE-2337-E<br><br>Case No.<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

### COUNT ONE
#### I. Introduction

1.   This case involves a claim made pursuant to 42 U.S.C. §1983 by the Talladega County Commission and certain individuals, that provisions of Alabama law allowing a municipal government to impose sales taxes in areas outside the limits of the municipality (sometimes referred to as the "police jurisdiction") where the residents are not allowed to vote for the members of the municipal government

1

imposing the taxes, and to appropriate the funds collected for municipal purposes within the city limits without any obligation to provide governmental services in the police jurisdiction, discriminates against them in violation of the equal protection clause of U.S. CONST. amend. XIV.

2. This action also claims reasonable attorneys' fees as a part of the costs pursuant to 42 U.S.C. §1988(b).

## II. Jurisdiction and Venue

3. This Court has jurisdiction of the federal questions raised herein by virtue of 28 U.S.C. §§1331 and 1343, and plaintiffs have no plain, speedy and efficient remedy in the courts of Alabama. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, or a substantial part of property that is the subject of the action is situated in this district, or both.

## III.   Parties

4. Plaintiff, **Talladega County Commission** (hereinafter "Talladega County"), is the governing body of Talladega County, Alabama, created by the State of Alabama as "a body corporate, with power to sue or be sued in any court of record," which voted, on October 26, 2015, by a majority of its members to institute this action on behalf of residents as described hereinafter.

5. Plaintiffs, **Robbie Angles** and **Lori Angles** (hereinafter "the Angles"), are resident citizens of, and registered voters in, Talladega County, who reside in the police jurisdiction outside the limits of the City of Lincoln (hereinafter "Lincoln") and cannot vote for any member of the governing city council, but who live within an area in which Lincoln enforces sales taxes on them through taxes on transactions occurring in the police jurisdiction.

6. Plaintiffs, **Angela Boozer** (hereinafter "Ms. Boozer") and **Thomas D. Martin** (hereinafter "Mr. Martin"), are residents of, and registered voters in, Talladega County, who reside in an area outside the limits of Lincoln and within an area in which Lincoln enforced sales taxes until October 13, 2015, and within which it "may elect [] to exercise jurisdiction and authority, including the assessment of a[ sales] tax" at any time.

7. Defendant, **City of Lincoln**, is a municipal corporation located in Talladega County organized and existing under the provisions of ALA. CODE §11-40-1 (1975) that claims a population exceeding 6,000.

8. Defendant, **Luther J. Strange, III** (hereinafter "the Attorney General"), is the attorney general of the State of Alabama who, by virtue of his office, "shall . . . attend to all cases other than criminal that may be pending . . . in the courts . . . of the United States, in any case in which the state may be interested in the result," and is sued in his official capacity as such.

9. Defendant, **Robert Bentley** (hereinafter "Governor Bentley"), is the governor of the State of Alabama and holds its "supreme executive power," who "shall take care that the laws be faithfully executed," and is sued in his official capacity as such.

10. Defendant, **Julie P. Magee** (hereinafter "Commissioner Magee"), is the Alabama Commissioner of Revenue, holding "all the powers, authority, and duties vested in the Department of Revenue," who is charged with collecting the Lincoln sales taxes at issue in this lawsuit, and is sued in her official capacity.

11. Defendant, **Thomas L. White, Jr.** (hereinafter "the Comptroller"), is the Comptroller of the State of Alabama, who has direction, supervision and control of the division of control and accounts of the State of Alabama Finance Department and who disburses funds collected by the Department of Revenue, including the funds collected pursuant to the taxes at issue in this case, and is sued in his official capacity.

## IV. Classification

12. Specific provisions of Alabama law divide individuals subject to municipal taxation into two classes: [1] One class consists of residents who are eligible to vote in elections for the municipal officials with authority to impose sales taxes on them while [2] the other classification consists of residents who, because of the location of their residence, are not eligible to vote in elections for

the municipal officials with authority to impose sales taxes on them and appropriate the funds collected.

13. Alabama law, at ALA. CODE §11-51-206 (1975), provides:

The council or other governing body [of a municipality] shall have the authority to levy and assess by ordinance within the police jurisdiction of any said city or town all taxes authorized by this article. . . ."

14. Another provision, ALA. CODE §11-51-200 (1975), provides that the "taxes authorized by this article" include "sales taxes, parallel to the state levy. . . ."

15. Alabama law further provides, in ALA. CODE §11-40-10 (1975) that "[t]he police jurisdiction in cities having 6,000 or more inhabitants shall cover all adjoining territory within three miles of the corporate limits. . . ."

16. The right to vote for municipal officers empowered to impose sales taxes and appropriate the funds collected is limited by ALA. CODE §11-46-4 (1975) to "electors residing in the municipality. . . ."

17. No provision of Alabama law imposes on a municipality an obligation to provide any governmental service in the police jurisdiction based upon the imposition of sales taxes in the police jurisdiction.

18. No compelling government purpose justifies the described classification dividing residents into those favored who may vote for the municipal officials who can impose taxes on them and those disfavored residents who cannot or the disparate treatment created thereby.

## V. Disparate Treatment

19. Lincoln exercised the powers granted it under state law by enacting sales taxes within the police jurisdiction imposing a tax rate of 1.5% of gross sales.

20. The plaintiffs in this case reside outside Lincoln's city limit and the businesses that collect the sales taxes at issue lie outside Lincoln's city limit.

21. Lincoln imposes the sales taxes pursuant to its taxing power on transactions occurring in the police jurisdiction where the residents may not vote for the municipal officials imposing the levy and appropriating the funds collected.

22. Those individuals who reside within the municipal limits of Lincoln may vote to elect the municipal officials who impose municipal sales taxes on them and appropriate the funds collected and they may also vote to elect officials of Talladega County and for various representatives and senators in the state legislature while those who reside in the police jurisdiction, but not within the municipal limits, may not vote to elect officials of Lincoln, though they may vote to elect officials of Talladega County and for various representatives and senators in the state legislature.

## VI. Standing
### A. Injury

23. Talladega County brings this action in its capacity as *parens patriae* in seeking to nullify the power of Lincoln to enact and enforce sales taxes for

general revenue purposes in that area subjected to Lincoln's power to tax, but in which the residents may not vote for municipal officials.

24. Over a number of years, Lincoln has annexed various parcels of land through the use of "long-lasso" and "island" annexations, the result of which is a grossly disproportionate increase in the area of the police jurisdiction as compared to the area within the city limit.

25. A "long-lasso" annexation occurs when a municipality annexes a public roadway of some length in an effort to create contiguity with an outlying parcel of property that would not otherwise be contiguous with the existing municipal limits.

26. An "island" annexation is annexation of property that is not contiguous with existing city limits.

27. Lincoln may exercise limited authority arbitrarily to refuse its police jurisdiction created by island annexations.

28. Lincoln has exercised its authority by first pursuing collection of sales taxes, then declining collection of sales taxes after October 26, 2015, in that portion of the police jurisdiction created by a single island annexation, but not all island annexations.

29. By use of long-lasso and island annexations, Lincoln can effect a ratio of property annexed to property included in the police jurisdiction of 1:18,000,

while, at the same time, utilizing the taxes raised in the larger police jurisdiction area to provide governmental services in the smaller annexed area.

30. A substantial portion of the residents of Lincoln's police jurisdiction are also residents of Talladega County, which has legal obligations to provide governmental services to them, including, for example, superintendence over public roads, bridges and ferries, and other services prescribed by law.

31. The residents of Talladega County who also reside in the police jurisdiction of Lincoln suffer direct financial injury by the tax scheme that allows Lincoln to impose taxes on residents who cannot vote in elections for the officials who impose the tax and appropriate the funds collected and the economic well-being of the residents is affected adversely.

32. The tax scheme reduces the opportunity for economic growth in the affected area, limiting the economic opportunities of the residents therein and making residence in the affected area less desirable.

33. Talladega County suffers a direct injury because it provides governmental services to the areas at issue while Lincoln consumes a portion of the tax base otherwise available for that purpose.

34. The Angles join this action as residents of, and registered voters in, the Lincoln police jurisdiction, who pay sales taxes to Lincoln imposed in the

police jurisdiction, but are prohibited because of the location of their residence, from voting for municipal officials with authority to impose the tax.

35. Ms. Boozer and Mr. Martin join this action as residents of, and registered voters in, the area subject to reimposition of a sales tax by Lincoln after Lincoln first imposed a tax, then declined to impose a tax, but has no impediment to reimposition of a tax.

### B. Causation

36. The plaintiffs challenge: [a] ALA. CODE §11-51-206 (1975) that allows municipal governments to impose sales taxes in areas where the residents are ineligible, because of the location of their residence, to vote for the officials enacting the taxes and appropriating the funds collected and where the municipal government has no obligation to provide governmental services; [b] the ordinance or resolution of the Lincoln municipal government in imposing sales taxes in areas where the residents may not vote for the officials imposing the taxes and appropriating the funds collected and where it has no obligation to provide governmental services; and [c] the acts of the defendant state officials in enforcing and perpetuating the scheme of taxation described.

37. The described activity causes a real and actual harm to the Angles and to the citizens that Talladega County represents who reside in Lincoln's police jurisdiction and imminent harm to Ms. Boozer and to Mr. Martin as it imposes

sales taxes on residents who have no voice in the government that imposes the taxes.

38. The injuries described are fairly traceable to the perpetuation of a taxing scheme that allows municipal governments to impose sales taxes on residents who are not eligible to vote for the officials imposing the taxes and appropriating the funds collected.

### C. Redressability

39. A judgment preventing Lincoln from imposing sales taxes on transactions occurring in its police jurisdiction when residents are not eligible to vote for the officials imposing the taxes will redress the actual and imminent injury to the individual plaintiffs as well as Talladega County and the residents it represents.

### VI. Discrimination

40. The tax scheme perpetuated by the defendants discriminates on its face against residents of the police jurisdiction solely on the basis of their place of residence by denying them the fundamental right to vote for the public officials who may impose sales taxes on them and appropriate the funds collected without any obligation to provide governmental services in the area where the taxes are imposed or to the residents therein.

41. Other residents, differentiated from residents of the police jurisdiction only by their place of residence, are granted a right to vote on public officials who may impose sales taxes on them and appropriate the funds collected.

42. The municipal officials chosen by the favored residents may appropriate the tax revenue collected from the disfavored residents to provide governmental services to the favored residents.

43. Strict scrutiny of the tax scheme described reveals that the residents of the police jurisdiction are denied a fundamental right to vote for those with the power to tax them and appropriate the funds collected.

44. No compelling governmental purpose exists for the discrimination described.

45. Plaintiffs have no plain, speedy and efficient remedy in the courts of Alabama to redress the discrimination.

## VII. Damages

46. Talladega County demands judgment against Lincoln for an amount equal to sums collected in sales taxes by Lincoln in its police jurisdiction since January 1, 2013, to be applied according to the doctrine of *cy pres* for the indirect, prospective benefit of those subjected to the tax in the police jurisdiction as nearly as possible to the original intent: The provision of governmental services to the residents in the police jurisdiction.

47. The Angles demand judgment against Lincoln for the amount they paid in sales taxes for Lincoln in the police jurisdiction since January 1, 2013.

48. Ms. Boozer demands judgment against Lincoln for the amount she paid in sales taxes for Lincoln in the police jurisdiction since January 1, 2013.

49. Mr. Martin demands judgment against Lincoln for the amount he paid in sales taxes for Lincoln in the police jurisdiction since January 1, 2013.

### VIII. Other Relief

50. Plaintiffs ask the Court to declare that the provisions of §11-51-206 (1975) that allow Lincoln to impose sales taxes on those who cannot vote to elect the municipal officials imposing the taxes and appropriating the funds collected violate the equal protection clause of U.S. CONST. amend. XIV and to enjoin the defendants from applying or enforcing them in the police jurisdiction of Lincoln.

### IX. Attorneys' Fees and Expenses

51. In this action to enforce a provision of 42 U.S.C. §1983, the plaintiffs have incurred reasonable attorneys' fees and expenses and request reimbursement thereof pursuant to 42 U.S.C. §1988(b).

WHEREFORE, plaintiffs ask the Court, after consideration of all the evidence, to declare that the provisions of ALA. CODE §11-51-206 (1975), insofar as they allow sales taxes in a geographical area where the residents may not vote to elect the officials imposing the taxes and appropriating the funds collected, violate

the equal protection clause of U.S. CONST. amend. XIV, and to enjoin defendants from applying or enforcing the statute in the police jurisdiction of Lincoln.

The Angles, Ms. Boozer and Mr. Martin demand judgment against Lincoln for the sales taxes they paid for Lincoln in the police jurisdiction on or after January 1, 2013.

Talladega County demands judgment against Lincoln for all other sums collected by Lincoln from sales taxes in the police jurisdiction since January 1, 2013, to be applied according to the doctrine of *cy pres* for the indirect, prospective benefit of those subjected to the taxes in the police jurisdiction as nearly as possible to the original intent: The provision of governmental services to the police jurisdiction.

Plaintiffs also ask the Court to determine a reasonable attorneys' fee for plaintiffs' counsel and tax that sum as costs against defendants.

Plaintiffs ask for such other and different relief to which they may be entitled.

## COUNT TWO

### I. Introduction

1. This case involves a claim made pursuant to 42 U.S.C. §1983 by Robbie Angles and Lori Angles (hereinafter "the Angles"), that the City of Lincoln (hereinafter "Lincoln") deprived them of their property without the due process of

law guaranteed them by U.S. CONST., amend. XIV, when it used its governmental power to delay the completion of certain improvements on their farm without a predeprivation hearing and without a practical post-deprivation opportunity to be heard in order to impose on them certain building permits and business licenses not authorized under Alabama law.

2. This action also claims reasonable attorneys' fees as a part of the costs pursuant to 42 U.S.C. §1988.

## II. Jurisdiction and Venue

3. This Court has jurisdiction of the federal questions raised herein by virtue of 28 U.S.C. §§1331 and 1343(a)(3). Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III.  Parties

4. Plaintiffs, **Robbie Angles** and **Lori Angles** (hereinafter "the Angles"), are resident citizens of, and registered voters in, Talladega County, Alabama, whose residence and farm lie in the police jurisdiction outside the limits of the City of Lincoln (hereinafter "Lincoln"), where Lincoln, exercising its police powers, enforces building permits and business licenses.

5. Defendant, **City of Lincoln**, is a municipal corporation located in Talladega County, Alabama, organized and existing under the provisions of ALA. CODE §11-40-1 (1975) that claims a population exceeding 6,000.

### IV. Facts

6. During 2013, the Angles decided to expand their farm operations on their property in the Lincoln police jurisdiction by adding new chicken houses to expand the farm's capacity to grow chickens.

7. The expansion was approaching completion in early January, 2014, when Lincoln claimed entitlement to a building permit for the chicken houses being completed on the property.

8. At the time that Lincoln contacted the Angles about a building permit, Lincoln had in force its Ordinance Number 2011-02 (hereinafter "the Ordinance"), effective November 9, 2010, because "it is in the public interest to monitor, control, and regulate the construction **within the city. . . .**" (emphasis supplied).

9. The Ordinance required "contractors, subcontractors and others performing work or services **in the city**" to purchase a license.

10. The Ordinance provided that "[a]ny person, firm, corporation, contractor, subcontractor who shall erect or attempt to erect a building, structure, barn, or any construction in which a permit is required, **located within the**

**corporate limits**, without first obtaining a permit . . . shall be in violation of this ordinance." (emphasis supplied).

11.     The construction on the Angles' property was not "within the city" nor "within the corporate limits" of Lincoln.

12.     Nevertheless, Lincoln issued a "stop order" pursuant to a provision of the Ordinance to the Angles' contractor and subcontractors requiring a cessation of all activities on the site and a delay in the operation of the new facilities.

13.     The "stop order" was issued without any pre-deprivation opportunity for the Angles to be heard in opposition, or any practical opportunity for a post-deprivation hearing or other mechanism for amelioration and without quantifying the amounts it claimed to be necessary for a release.

14.     On demand of Lincoln, the Angles paid $454.27 on February 5, 2014, and $4,193.62 on February 27, 2014, to obtain a release of the "stop order."

15.     The Angles were deprived of $4,647.89 in payments to Lincoln for building permit fees they did not owe, and lost the use of the improvements to their property causing lost income of $35,932.39 arising from the delay in the availability of the new construction for their business from the first week of January, 2014, to February 27, 2014.

16. In this action to enforce a provision of 42 U.S.C. §1983, the plaintiffs have incurred reasonable attorneys' fees and expenses and request reimbursement thereof pursuant to 42 U.S.C. §1988(b).

### V. Request for Relief

WHEREFORE, the Angles demand judgment against Lincoln for FORTY-THOUSAND FIVE HUNDRED EIGHTY and 28/100 DOLLARS ($40,580.28) plus costs. Plaintiffs also request that the Court include in the costs of this case a reasonable fee and expenses for the attorneys for the plaintiffs.

_____
BARRY D. VAUGHN
Bar No. ASB 8520 N76B
PROCTOR & VAUGHN, LLC
201 North Norton Avenue
Sylacauga, AL  35150-2455
256/249-8527: Fax: 256/249-7123
BDV@PandV.net

_____
JAMES M. SIZEMORE, JR.
Bar No. ASB 8513 E68J
ATTORNEY AT LAW
6732 Highway 63, South
Alexander City, AL  35010-6170
256/409-1985: Fax: 256/409-1987
JamesMSizemore1@Gmail.com

### JURY DEMAND

Please take notice that the plaintiffs demand a trial by jury of all the issues in this cause.

_____
JAMES M. SIZEMORE, JR.
ATTORNEY AT LAW