IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TALLADEGA COUNTY COMMISION, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CASE NUMBER: 15-CV-2337-KOB ) |
| CITY OF LINCOLN, et al., | ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF LAW**

COMES NOW the Defendant City of Lincoln, AL, a municipal corporation, and offers this Brief and Memorandum of Law in support of its Motion to Dismiss the Complaint in this case, averring as follows:

**Introduction and Factual Background**

The core of the Plaintiffs' Complaint in this action seeks to challenge the constitutionality of certain portions of the Code of Alabama (1975) allowing for the assessment and collection of sales taxes by municipalities. The individual Plaintiffs challenge the City of Lincoln's implementation of a uniform sales tax on the supposed infirmity that those Plaintiffs cannot vote in elections for the City of Lincoln's municipal government. The Plaintiffs' claims are analogous to a challenge to the City of Birmingham's sales tax by a resident of McCalla, simply because the resident of McCalla cannot vote in Birmingham City elections.

Two Alabama statutes allow for the Defendant City of Lincoln to impose a sales tax in a specific area outside the City's corporate limits, referred to as its "police jurisdiction," in which the City provides services to residents in that area that they would otherwise not receive. The first statute states in part that:

> The police jurisdiction in municipalities having 6,000 or more inhabitants **shall** cover all adjoining territory within three miles of the corporate limits, and in municipalities having less than 6,000 inhabitants and in towns, the police jurisdiction shall extend also to the adjoining territory within a mile and a half of the corporate limits of the municipality or town.

Ala. Code § 11-40-10(a).  As noted in Paragraph 7 of the Complaint, the City of Lincoln has more than 6,000 citizens and therefore a police jurisdiction extending three miles beyond the City's corporate limits.  The second statute holds:

> The council or other governing body **shall** have the authority to levy and assess by ordinance within the police jurisdiction of any municipality or town all taxes authorized by this article [*i.e.* sales taxes]; provided, that said levy and assessment shall not exceed one-half the amount levied and assessed for like businesses, sales or uses conducted within the corporate limits, fees and penalties excluded.

Ala. Code § 11-50-206.  The City of Lincoln passed a sales tax in the amount of 5 % in October of 2007.  **Exhibit** 1.  By operation of law, the sales tax within the police jurisdiction of the City of Lincoln is therefore 2½ %.

In the face of these statutes, the Plaintiffs seek unspecified damages related to the Plaintiffs' payment of sales taxes for unspecified transactions.  All claims in the Complaint are brought pursuant to 42 U.S.C. § 1983 for supposed violations of the Equal Protection or Due Process clauses of the Fourteenth Amendment.  There is no other alleged basis to support federal jurisdiction.  The Complaint nowhere alleges where or to what businesses or establishments the Plaintiffs paid sales taxes since Jan. 1, 2013.  Neither does it specify the amount of sales taxes each Plaintiff supposedly paid during that same period.  Rather, it simply alleges that they have been denied their constitutional rights under the Equal Protection Clause because the City of Lincoln – pursuant the authority granted it by the Alabama Legislature – has imposed a sales tax within the confines of its police jurisdiction, a sales tax that is uniformly imposed upon everyone who buys goods or services within that jurisdiction.

The Plaintiff Talladega County Commission ("TCC") has brought its claims in this action on "behalf of residents," but "in its capacity as *parens patriae*."[1] Complaint, ¶'s 4, 23.  The TCC seeks to recover "an amount equal to sums collected in sales taxes by Lincoln in its police jurisdiction since January 1, 2013." *Id.*, ¶ 13.  Plaintiffs Angela Boozer and Thomas D. Martin claim to "reside in an area outside the limits of Lincoln and within an area in which Lincoln enforced sales taxes until October 13, 2015."[2] *Id.*, ¶ 6.  Plaintiffs Robbie Angles and Lori Angles "reside in the police jurisdiction outside the limits of the City of Lincoln," but in "an area in which Lincoln enforces sales taxes on them." *Id.*, ¶ 5.  The Angles, Ms. Boozer and Mr. Martin all seek to recoup an unspecified amount they supposedly paid in sales taxes in the police jurisdiction of the City of Lincoln since Jan. 1, 2013. Complaint, ¶'s 47-49.  Again, this sales tax is enforced on any purchaser, wholly regardless of his or her place of residence, who might buy a good or service within the police jurisdiction of the City of Lincoln.

The Angles have also sued the City because it required their contractor to obtain a building permit prior to erecting a chicken house on their property. *See* Complaint, p. 13-16. Furthermore, the Complaint asks this Court to enjoin the City of Lincoln from imposing sales taxes despite the authority granted to the City under § 11-51-200, *et seq*., and to "declare that the provisions of § 11-51-206 … violate the equal protection clause of U.S. Const. amend. XIV." *Id.*, ¶'s 39, 50.  However, all the claims raised by all of the Plaintiffs have been conclusively decided already, *on numerous other occasions by various appellate courts*, to be without merit.

---

[1]   "*Parens patriae* means literally 'parent of the country.' The *parens patriae* action has its roots in the common-law concept of the 'royal prerogative.' *Alfred L. Snapp & Son v. P.R.*, 458 U.S. 592, 600 (U.S. 1982). "This prerogative of *parens patriae* is inherent in the supreme power of every **State**." *Mormon Church v. United States*, 136 U.S. 1, 57 (1890)(emphasis added).  As will be shown, *infra.*, use of the *parens patriae* doctrine is unavailable to political subdivisions of a State, such as Talladega County or the Talladega County Commission.

[2]   Thus, the face of the Complaint demonstrates that Ms. Boozer and Mr. Martin face no threat of imminent injury and therefore have no standing to sue the City for equitable relief, even under the outlandish theories alleged; they are due to be dismissed as Plaintiffs without the necessity of having their claims scrutinized.

Indeed, both the Alabama and U.S. Supreme Courts have long ago held that the Alabama statutes and the taxing authority of the City of Lincoln do not violate either the Equal Protection or Due Process Clauses of the Fourteenth Amendment. Additionally, the Tax Injunction Act, 28 U.S.C. § 1341, and the principles of comity established in Supreme Court jurisprudence bar all the Plaintiffs' claims for equitable relief, declaratory relief, damages and attorneys' fees. *See, e.g., Fair Assessment in re: Al Estate Ass'n v. McNary*, 454 U.S. 100 (1981). Even if these insurmountable hurdles did not prevent the claims being alleged, the face of the Complaint demonstrates a complete lack of an Article III case or controversy regarding the claims of Ms. Boozer, Mr. Martin and the TCC.

For all these reasons, in addition to those to be more fully discussed herein, the Complaint in this case is due to be DISMISSED in its entirety.

## **Argument and Citation of Authority**

### 1. *The Talladega County Commission has No Standing to Bring Suit*

"Standing is a jurisdictional inquiry, and a 'party invoking federal jurisdiction bears the burden' of establishing that he has standing to sue." *ACLU of Fla. v. Dixie County*, 690 F.3d 1244, 1247 (11th Cir. 2012)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The U.S. Supreme "Court has always required that a litigant have 'standing' [under Article III of the U. S. Constitution] to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). Standing is "perhaps the most important of [the jurisdictional] doctrines" that limit the ability of litigants to bring causes of action in court. *Allen v. Wright*, 468 U.S. 737, 750 (1984).

It cannot therefore be overstated enough that without standing to bring the Plaintiffs' claims, this Court has no jurisdiction to hear them.

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, … *Warth v. Seldin*, 422 U.S. 490, 508, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740-741, n. 16, 31 L. Ed. 2d 636, 92 S. Ct. 1361 (1972); and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" *Whitmore, supra*, at 155 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983)). Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.*, at 38, 43.

*Lujan*, *supra.*, 504 U.S. at 560. The TCC cannot meet the jurisdictional prerequisite of standing because it has completely failed to allege an "actual or imminent injury" that is "concrete and particularized." Whether on the basis of standing or otherwise, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The TCC simply has nowhere done so, and, of course, it goes without saying that it cannot show that an absent injury will (or even could) be redressed by a favorable decision.

Rather, the TCC has sought to invoke standing (or to circumvent the jurisdictional requirement) by bringing claims in "its capacity as *parens patriae*." Complaint, ¶ 23. However, it is well settled that only a sovereign entity can bring suit under such a theory. "[T]he federal government and the states, as the twin sovereigns in our constitutional scheme, may in appropriate circumstances sue as *parens patriae* to vindicate interests of their citizens." *In re Multidistrict Vehicle Air Pollution*, 481 F.2d 122, 131 (9th Cir. Cal. 1973). But neither Talladega County nor the TCC are a "sovereign" capable of doing so. *FTC v. Phoebe Putney*

5

*Health Sys.*, 663 F.3d 1369, 1375 (11th Cir. 2011)("political subdivisions … are not themselves sovereign")(citing *City of Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 412 (1978)).

> [P]olitical subdivisions such as **cities and counties**, **whose power is derivative and not sovereign, cannot sue as *parens patriae***.

*Id.* (emphasis added); *See also United States v. Pittsburg*, 661 F.2d 783, 787 (9th Cir. Cal. 1981) ("only the states and the federal government may sue as *parens patriae*"); *City of Hartford v. Town of Glastonbury*, 561 F.2d 1032, 1046-47 (2d Cir. 1976)(Meskill, J. dissenting), rehearing *en banc*, 561 F.2d 1032, 1048 (2d Cir. 1977), cert. denied, 434 U.S. 1034 (1978); *Orangetown v. Gorsuch*, 544 F. Supp. 105 (S.D. N.Y. 1982); *County of Lexington v. Columbia*, 400 S.E.2d 146, 147 (S.C. 1991)("As a political subdivision of the State, however, [the county] lacks the sovereignty to maintain a suit under the doctrine of parens patriae."); *Board of County Comm'rs v. Denver Bd. of Water Comm'rs*, 718 P.2d 235, 241 (Colo. 1986)("the lack of sovereignty prevents the Counties from pursuing this action as parens patriae"); *Board of Supervisors v. Virginia Dep't of Social Services*, 731 F. Supp. 735, 741 (W.D. Va. 1991)(recognizing a county's lack of sovereignty prevented it from brining a suit under a theory of *parens patriae*).

The Talladega County Commission has nowhere articulated an actual or imminent injury, nor can it avail itself of the *parens patriae* doctrine. The TCC simply has no standing to bring its claims in this case, and must be DISMISSED as a party.

  2. *The TCC cannot challenge State law under the Fourteenth Amendment*

As already noted in the immediately preceding section, counties are political subdivisions of the state; therefore, Talladega County is a political subdivision of the State of Alabama. *See In re Multidistrict Vehicle Air Pollution*, 481 F.2d at 131. Political subdivisions, though, "**may not raise a Fourteenth Amendment claim under Section 1983**." *United States v. Alabama*, 791 F.2d 1450, 1455 (11th Cir. 1986). The U. S. Supreme Court's decision in *Monell v. N.Y. Dept. of*

*Soc. Srvs.*, 436 U.S. 658 (1977), allowing municipalities to be sued for the first time as a "person" under § 1983, "'does not call into question the principle that **a city or county <u>cannot</u> challenge a state statute on federal constitutional grounds**.'" *Id.* (quoting *Appling City v. Municipal Elec. Authority of GA,* 621 F.2d 1301, 1308 (5th Cir. 1980))(emphasis added); *see also N.Y.C. v. Richardson*, 473 F.2d 923, 929 (2nd Cir. 1973)("Political subdivisions of a state may not challenge the validity of a state statute under the Fourteenth Amendment.").

All the claims by all of the Plaintiffs in this are brought pursuant 42 U.S.C. § 1983 for supposed violations of Fourteenth Amendment rights. Clearly, though, Talladega County and/or the TCC cannot do so, and must be dismissed from this lawsuit.

### 3. *The Equitable Claims of Thomas Martin and Angela Boozer are Moot*

All Plaintiffs' seek to enjoin the City of Lincoln from enforcing a sales tax in its police jurisdiction, and to have this Court declare Ala. Code § 11-50-206 unconstitutional. The Complaint explicitly alleges that Ms. Boozer and Mr. Martin "are residents of, and registered voters in, Talladega County, who reside in an area outside the limits of Lincoln and within an area in which Lincoln enforced sales taxes <u>until</u> October 13, 2015." Pursuant to recent changes to Code § 11-40-10 by the Alabama Legislature [*see* Act No. 2015-361], Lincoln passed Resolution No. 2016-02 [**Exhibit 2**], and thereby elected not to exercise any authority or jurisdiction over the police jurisdiction of a non-contiguous part of the City, eliminating the assessment and collection of sales taxes within the police jurisdiction of an area of the City known as Lincoln Harbor.[3] Again, the Complaint explicitly states that the City of Lincoln has not enforced sales taxes within this specific area since October 13, 2015.

---

[3] On information and belief, Mr. Martin and Ms. Boozer live in the police jurisdiction of the Lincoln Harbor portion of the City of Lincoln. Of course, the Complaint does not allege where Mr. Martin and Ms. Boozer live, further calling into question their ability to demonstrate any standing to bring the claims alleged in the Complaint.

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "Cases" and "Controversies." U.S. Const. Art. III, § 2.  The doctrine of mootness derives directly from the case-or-controversy limitation because "an action that is moot cannot be characterized as an active case or controversy." *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997).  "Equitable relief is a prospective remedy, intended to prevent future injuries." *Id.* "When the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Id.*  Upon the passage of Resolution No. 2016-02, the claims of Mr. Martin and Ms. Boozer seeking an injunction and/or declaratory relief became moot.

"[A] federal court may not grant injunctive relief when, as in this case, intervening events have eliminated any reasonable anticipation that the aggrieved party will, in the future, be faced with a recurrence of the alleged harm." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 49 (1st Cir. 2006)(citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).  "[A] court may not "enjoin conduct which is neither threatened nor imminent." *Sullivan v. Division of Elections*, 718 F.2d 363, 365 (11th Cir. 1983)(quoting *Congress of Racial Equality v. Douglas*, 318 F.2d 95, 100 (5th Cir. 1963)).  The reason, of course is that logically, "a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994).

While all of the Plaintiffs' claims against the City of Lincoln are void of any merit and are due to be dismissed as a matter of law, even if they could survive legal challenge at this stage of the litigation, the equitable claims of Plaintiffs Boozer and Martin should be dismissed because the City of Lincoln's election to abstain from exercising authority over the police jurisdiction where they live renders their claims moot.  The burden is squarely upon Mr. Martin

and Ms. Boozer to show that the City of Lincoln would revert to its supposedly illegal activity of imposing a sales tax, thereby allowing them to avoid mootness under the "voluntary cessation" doctrine; governmental entities are entitled to a presumption, though, that the illegal conduct will not recur. *Coral Springs v. City of Sunrise*, 371 F.3d 1320, 1328-29 (11th Cir. 2004). The Eleventh Circuit applies a "rebuttable presumption" in favor the City, so that "a challenge to a government policy that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Troiano v. Supervisor of Elections in Palm Beach County*, 382 F.3d 1276, 1283-85 (11th Cir. 2004).

Thus, even were the City of Lincoln's actions unlawful by imposing a sales tax, the equitable claims of Mr. Boozer and Mr. Martin are moot, and warrant dismissal.

### 4. *The Tax Injunction Act (28 U.S.C. § 1341) Bars Jurisdiction of Suit in this Court*

Every single claim of every single Plaintiff must be dismissed based upon the jurisdictional bar contained in 28 U.S.C. § 1341. This statute holds that the "District courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

> [It] "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S. [68,] 73 [(1976)]. This last consideration was the principal motivating force behind the Act: this legislation was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.

*Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522 (1981). The "mere illegality or unconstitutionality of a state … tax is not in itself a ground for equitable relief in the courts of the United States." *Great Lakes Co. v. Huffman*, 319 U.S. 293, 298 (1943). The Act actually "**limits jurisdiction which otherwise might exist**," and is "intended to prevent taxpayers from

9

using federal courts to raise questions of state or federal law relating to the validity of particular taxes." *Osceola v. Fla. Dep't of Revenue*, 893 F.2d 1231, 1232-33 (11th Cir. 1990).

The statute facially prohibits claims that seek to enjoin the imposition of state taxes in federal court, but as *Great Lakes* insinuated, its reach must be extended to claims for declaratory relief. Thus, the U.S. Supreme Court has thereafter expressly held that the principles behind § 1341 prohibit claims for declaratory relief, and for damages as well. "The Act's goal could not be achieved if the statutory language were read literally, as barring only injunctions, and so it's been stretched to cover declaratory judgments, and, what is as necessary to prevent the Act from being completely undone, suits for refund of state taxes." *Wright v. Pappas*, 256 F.3d 635, 636 (7th Cir. 2001)(citing *California v. Grace Brethren Church*, 457 U.S. 393, 408-13 (1982), and *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323 (5th Cir. 1979)). After discussing the purpose and history behind § 1341, the U.S. Supreme Court held that the principles of comity between the federal and state governments, as duel sovereigns, prevents even claims for damages based upon a supposedly unconstitutional state tax scheme. *Fair Assessment in re Al Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981)("**we hold that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts**.").

Thus, the Tax Injunction Act, 28 U.S.C. § 1341, bars all of the Plaintiffs claims, whether for damages, injunctive or declaratory relief.[4] "The Tax Injunction Act is a jurisdictional rule

---

[4] The Tax Injunction Act does provide an exception to its jurisdictional bar should state law fail to provide a "plain, speedy and efficient remedy" in its courts. However, the burden rests squarely on the Plaintiffs to demonstrate this exception:

> The Supreme Court has held that "the 'plain, speedy and efficient' exception requires the 'state-court remedy [to meet] certain *procedural* criteria.'" *California v. Grace Brethren Church*, 457 U.S. 393, 411, 102 S. Ct. 2498, 2509, 73 L. Ed. 2d 93 (1982) (quoting *Rosewell*, [1256] 450 U.S. at 512, 101 S. Ct. at 1229 (emphasis in original)). The touchstone for whether a taxpayer has a "plain, speedy, and efficient" remedy is whether she is entitled to a "full hearing and judicial

and constitutes a broad jurisdictional barrier" to bringing any claims challenging state tax laws. *I.L. v. Alabama*, 739 F.3d 1273, 1282 (11th Cir. 2014). The jurisdictional barriers to the Plaintiffs' claims simply cannot be overcome, and the Complaint is due to be DISMISSED in its entirety.

5. ***The Complaint Fails to State a Claim under the Fourteenth Amendment***

The Plaintiffs claims challenge the City of Lincoln's imposition of a tax upon residents living in its police jurisdiction. However, just such a challenge was brought by residents living in the police jurisdiction of the City of Tuscaloosa in the case of *Holt Civic Club v. Tuscaloosa*, 439 U.S. 60 (1978). In that case,

> [the plaintiffs] claimed that the city's extraterritorial exercise of police powers over Holt residents, without a concomitant extension of the franchise on an equal footing with those residing within the corporate limits, denies residents of the police jurisdiction rights secured by the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

439 U.S. at 62-3. The *Holt* plaintiffs had also "requested the District Court to declare the Alabama statutes [creating a police jurisdiction and allowing for taxation within it] unconstitutional and to enjoin their enforcement insofar as they authorize the extraterritorial exercise of municipal powers." *Id.* at 65. The claims of the Plaintiffs in the case *sub judice* are

---

determination at which she may raise any and all constitutional objections to the tax." *Rosewell*, 450 U.S. at 514, 101 S. Ct. at 1230 (internal quotation marks and citation omitted). Importantly, "we must construe <u>narrowly</u> the 'plain, speedy, and efficient' exception to the Tax Injunction Act." *Grace Brethren*, 457 U.S. at 413, 102 S. Ct. at 2510 (emphasis added). As such, the burden rests on the plaintiffs to show facts sufficient to overcome the jurisdictional bar of the Tax Injunction Act. *See Smith v. Travis County Educ. District*, 968 F.2d 453, 456 (11th Cir. 1992).

*Amos v. Glynn County Bd. of Tax Assessors*, 347 F.3d 1249, 1255-56 (11th Cir. 2003). The City of Lincoln adopts all arguments made by Julie P. Magee as Commissioner of the Dept. of Revenue in her brief, including, specifically, those in Section 4 thereof which demonstrate that Alabama's State courts provide a remedy to the Plaintiffs meeting this "plain, speedy and efficient" criteria. Furthermore, the Plaintiffs bald, conclusory assertions that they have "no plain, speedy and efficient remedy in the courts of Alabama" fail to meet Fed. R. Civ. P. 8's pleading standards. Again, Rule 8 "requires more than labels and conclusions," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the Plaintiffs' failure to do no more further supports dismissal of the Complaint.

11

nearly identical to those in *Holt Civic Club*, but the Plaintiffs have ignored the binding U.S. Supreme Court precedent contained in that decision by filing their Complaint before this Court.

Every aspect of the Plaintiffs' claims in this case has already been decided in the *Holt Civic Club* case. The Court there held that the plaintiffs' claims of disenfranchisement – being subjected to taxes enforced by the City of Tuscaloosa in its police jurisdiction while being unable to vote in Tuscaloosa's municipal elections – were outside the protections of the Fourteenth Amendment. The "[plaintiffs'] case, like their homes, falls on the farther side" of the Court's voting qualification decisions. *Holt Civic Club*, 439 U.S. at 70. The Court further recognized that since unincorporated areas border most population centers in Alabama and elsewhere,

> state legislatures have a legitimate interest in seeing that this substantial segment of the population does not go without basic municipal services such as police, fire and health protection. … Nor [is] it unreasonable for the Alabama Legislature to require police jurisdiction residents to contribute … to the expense of services provided them by the city. The statutory limitation … to half the amount exacted within the city assures that police jurisdiction residents will not be victimized by the city government.

*Id.* at 74. Ultimately, the Supreme Court held that the challenged statutes violated "neither the Equal Protection Clause nor the Due Process Clause of the Fourteenth Amendment." *Id.* at 75. In so holding, it recognized that it was not the place of the Court to supplant its wisdom for that of Alabama's Legislature, but noted that the citizens of the State "are free to urge their proposals to that body." *Id.* at 74. Indeed, it would seem that the Plaintiffs' ire in this case should really be directed at the Alabama Legislature, but they attempt to exact their frustration through a lawsuit against the City of Lincoln.

Consistent with the U. S. Supreme Court's construction of Alabama's laws governing municipal taxation within police jurisdictions, the Alabama Supreme Court has recognized that the statutes challenged here, *i.e.* Ala. Code §§ 11-40-10, 11-51-206, do not violate the notions of

"due process guaranteed by the United States and Alabama Constitutions." *City of Hoover v. Oliver & Wright Motors, Inc.*, 730 So.2d 608, 613 (Ala. 1999)(citing *Holt Civic Club*, 439 U.S. 60).[5] In specifically upholding the legality of Ala. Code § 11-51-206, the very statute sought to be declared unconstitutional in this case, the Alabama Supreme Court enumerated several well-reasoned bases for the Legislature's grant of sales taxing authority to municipalities:

> First, the legislature reasonably could have determined that if a municipality was not authorized to impose a sales tax in its police jurisdiction, local merchants might opt to conduct their businesses just outside the city limits, thus avoiding the burden of a sales tax while simultaneously enjoying most, if not all, of the benefits provided by the municipality within its city limits. Second, the legislature reasonably could have assumed that those businesses engaging in commercial activities within municipal police jurisdictions enjoy tangible and intangible benefits that result from those businesses' close proximity to the municipality, and that those benefits are comparable, and frequently identical, to those enjoyed by businesses operating within the corporate limits; and that this fact makes it appropriate for those businesses within the police jurisdiction to share directly in the burden of financing the expenses generally associated with providing those benefits. Third, the legislature reasonably could have concluded that authorizing a municipality to access an expanded sales-tax base would allow the per capita sales-tax burden to be shouldered more equitably by all those benefiting from municipal revenue. Fourth, the legislature reasonably could have assumed that without an expanded sales-tax base, a municipality would be more likely to annex adjoining areas solely for the purpose of raising additional revenue, rather than for the purpose of supporting the growth of its citizenry.

*Id.* at 612-13. Thus, as the *City of Hoover* case illustrates, there a several reasons the "United States Supreme Court upheld Alabama's statutory scheme as a reasonable exercise of the state's authority to regulate municipalities and areas just outside their corporate limits." *Id.* at 612.

With both an abundance of Alabama and Supreme Court precedence establishing that the statutes which the Plaintiffs challenge, and on which their claims under 42 U.S.C. § 1983 are based, do not violate the Fourteenth Amendment, the Complaint in this case must be DISMISSED.

---

[5] While *Holt Civic Club* held that the challenged statutes violated neither the due process nor equal protection guaranteed by the U. S. Constitution, the Alabama Constitution has no equal protection clause. *Ex parte Melof*, 735 So. 2d 1172, 1182 (Ala. 1999).

## **Conclusion**

WHEREFORE, the foregoing premises considered, the Defendant City of Lincoln, Alabama would ask this Court to GRANT its Motion to Dismiss, and for any further relief deemed proper under the circumstances.

Respectfully submitted,

s/ James W. Porter, II
James W. Porter II
Richard Warren Kinney
*Attorneys for City of Lincoln*

OF COUNSEL:

**Porter, Porter & Hassinger, P.C.**
P.O. Box 128
Birmingham, Alabama  35201-0128
T: (205) 322-1744; F: (205) 322-1750
jwporterii@pphlaw.net
wkinney@pphlaw.net

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon the following, this the 25th day of January, 2016. If Notice of Electronic Filing indicates that Notice should be delivered by other means to any of the following, I certify that a copy will be sent via U.S. Mail, properly addressed, postage prepaid.

Barry D. Vaugh
**Proctor & Vaughn, LLC**
201 N. Norton Ave.
Sylacauga, AL 35150-2455
BDV@PandV.net
*Attorney for Plaintiffs*

Luther J. Strange, III
James W. Davis
Laura E. Howell
**Office of the Alabama Attorney General**
501 Washington Avenue
Montgomery, AL 36130
jimdavis@ago.state.al.us
lhowell@ago.state.al.us
*Attorneys for Governor Bentley,*
*Attorney General Strange, and*
*Comptroller White*

James M. Sizemore, Jr.
**Attorney at Law**
6732 Highway 63, South
Alexander City, AL 35010-6170
JamesMSizemore1@gmail.com
*Attorney for Plaintiffs*

David Avery
Christy Edwards
**AL Dept. of Revenue – Legal Division**
50 N. Ripley Street
Montgomery, AL 36104
david.avery2@revenue.alabama.gov
Christy.edwards@revenue.alabama.gov
*Attorneys for Commissioner Magee*

                              s/ James W. Porter, II
                              OF COUNSEL