## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **TALLADEGA COUNTY COMMISSION, a governmental corporation, et al** | ) ) ) | |
| | ) | **Case No. 1:15-cv-002337 KOB** |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| **CITY OF LINCOLN, a municipal corporation, et al** | ) ) | |
| | ) | |
| **Defendants** | ) | |

## AMENDED COMPLAINT

Come now the Plaintiffs and, within the time for amendment as a matter of course allowed by FED. R. CIV. P. 15(a)(1)(B), amend their complaint by restating COUNT ONE, and by correcting a grammatical error in COUNT TWO (substituting the word "or" for the incorrect word "nor" in ¶11), as follows:

### COUNT ONE
### I. Introduction

1.    This case involves a claim made pursuant to 42 U.S.C. §1983 by the individual plaintiffs, and by the Talladega County Commission, that provisions of Alabama law allowing a municipal government to impose sales taxes in areas outside the limits of the municipality (sometimes referred to as the "police

1

jurisdiction") where the residents are denied the right to vote for the members of the municipal government imposing the taxes, and appropriating the collected funds for municipal purposes within the city limits without any obligation to provide governmental services in the police jurisdiction, discriminates against them, both facially and as applied to the disfavored class by the Defendant, in violation of the equal protection clause of U.S. CONST. amend. XIV.

2.     This action also claims reasonable attorneys' fees as a part of the costs pursuant to 42 U.S.C. §1988(b).

3.     The phrase "no taxation without representation" was used extensively to oppose the Stamp Act, adopted by the British Parliament in 1765 to be applied to the American colonies.

4.     The colonies resisted the British attempt to impose an internal tax on them while they had no representation in the Parliament that enacted the tax.

5.     The issue was sufficiently important that Thomas Jefferson's proposed declaration submitted to the Second Continental Congress and adopted on July 4, 1776, expressed as a reason for "dissolv[ing] the political bands which have connected them to [Britain]," that the British Crown had "impos[ed] Taxes on us without our consent. . . ." DECLARATION OF INDEPENDENCE paras. 1, 2 (U.S. 1776).

6.    This case seeks a determination of whether the concerns of the Second Continental  Congress have meaning 240 years later and whether the City of Lincoln may impose taxes on residents despite their having no right to vote for the governing body that imposes the taxes and expends the funds it collects therefrom.

## II. Jurisdiction and Venue

7.    This Court has jurisdiction of the federal questions raised herein by virtue of 28 U.S.C. §§1331 and 1343, and plaintiffs have no plain, speedy and efficient remedy in the courts of Alabama. The claims of the Talladega County Commission are so related to the claims of the individual plaintiffs that they form part of the same case or controversy.

8.    Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, or a substantial part of property that is the subject of the action is situated in this district, or both.

## III.   Parties

9.    Plaintiff, **Talladega County Commission** (hereinafter "Talladega County"), is the governing body of Talladega County, Alabama, created by the State of Alabama as "a body corporate, with power to sue or be sued in any court of record," which voted, on October 26, 2015, by a majority of its members, to institute this action.

10.     Plaintiffs, **Robbie Angles** and **Lori Angles** (hereinafter "the Angles"), are resident citizens of, and registered voters in, Talladega County, residing outside the limits of the City of Lincoln (hereinafter "Lincoln"), but within its police jurisdiction where they are denied a right to vote for any member of the governing city council. The Angles are subject to sales taxes payable to Lincoln on transactions occurring in the police jurisdiction, but receive no governmental services from those sales taxes.

11.     Plaintiffs, **Angela Boozer** (hereinafter "Ms. Boozer") and **Thomas D. Martin** (hereinafter "Mr. Martin"), are residents of, and registered voters in, Talladega County, who reside in an area outside the limits of Lincoln and within an area in which they paid sales taxes to Lincoln on transactions occurring within the police jurisdiction until October 13, 2015, but received no governmental services from those sales taxes.

12.     Lincoln "may elect [] to exercise jurisdiction and authority, including the assessment of a[ sales] tax," over its police jurisdiction arbitrarily at any time and, as it has in this case, attempt to evade review by withdrawing its exercise upon a challenge only to reinstate control once it evades the challenge.

13.     Defendant, **City of Lincoln**, is a municipal corporation located in Talladega County organized and existing under the provisions of ALA. CODE §11-40-1 (1975) that claims a population exceeding 6,000.

# IV. Classification

14.     Specific provisions of Alabama law classify individuals subject to municipal taxation into two classes: [1] One class consists of favored residents with a right to vote in elections for the municipal officials with authority to impose sales taxes on them and appropriate those funds for general governmental purposes while [2] the other class consists of disfavored residents who, because of the location of their residence, are without a right to vote in elections for the municipal officials with authority to impose sales taxes on them and appropriate the collected funds.

15.     As applied to the Angles, Ms. Boozer and Mr. Martin, Lincoln's sales taxes, collected pursuant to its general taxing power from the police jurisdiction without providing governmental services related to the sales taxes derived from that area, are an unconstitutional discrimination against them.

16.     Alabama law, at ALA. CODE §11-51-206 (1975), provides:

> The council or other governing body [of a municipality] shall have the authority to levy and assess by ordinance within the police jurisdiction of any municipality or town all taxes authorized by this article. . . ."

17.     Another provision, ALA. CODE §11-51-200 (1975), provides that the "taxes authorized by this article" include "sales taxes, parallel to the state levy. . . ."

18. Alabama law further provides, in ALA. CODE §11-40-10 (1975) that "[t]he police jurisdiction in municipalities having 6,000 or more inhabitants shall cover all adjoining territory within three miles of the corporate limits. . . ."

19. The right to vote for municipal officers empowered to impose sales taxes and appropriate the collected funds is limited by ALA. CODE §11-46-4 (1975) to "electors residing in the municipality. . . ."

20. No provision of Alabama law imposes on a municipality an obligation to provide any governmental service in the police jurisdiction based upon the imposition of sales taxes in the police jurisdiction.

21. A provision of Alabama law effective September 1, 2015, established a municipal obligation to report publicly [i] sales tax revenues collected in police jurisdictions created by annexations occurring after (but not on or before) September 1, 2015, and [ii] the governmental services provided by the municipality therein, but without a requirement to report the cost of the services or to appropriate the sales taxes collected for services either in the original police jurisdiction or in the expanded police jurisdiction.

22. The unlawful discrimination described requires the disfavored class to pay for governmental services twice, once to Lincoln which provides no services to them, and again to Talladega County which does.

23. No compelling government purpose justifies the described classification dividing residents into those favored residents who may vote for the municipal officials who can impose taxes on them and those disfavored residents who are subject to taxation without representation.

## V. Disparate Treatment

24. Lincoln exercised the powers granted it under state law by enacting sales taxes within the police jurisdiction based upon the gross proceeds of sales of retail merchants therein.

25. The individual plaintiffs in this case reside outside Lincoln's city limit and the businesses that collect the sales taxes at issue lie outside Lincoln's city limit.

26. Lincoln imposes the sales taxes pursuant to its taxing power on transactions occurring in the police jurisdiction where the residents are denied the right to vote for the municipal officials imposing the levy and appropriating the collected funds.

27. Those individuals who reside within the municipal limits of Lincoln may vote to elect the municipal officials who impose municipal sales taxes on them and appropriate the collected funds and they may also vote to elect officials of Talladega County and for various representatives and senators in the state legislature while those who reside in the police jurisdiction, but not within the

municipal limits, are denied the right to vote to elect officials of Lincoln, though they may vote to elect officials of Talladega County and for various representatives and senators in the state legislature.

## VI. Standing
### A. Injury

28. Talladega County brings this action for its loss of revenue arising from Lincoln's preemption of a portion of the tax base otherwise available to Talladega County, in seeking to nullify by injunction the power of Lincoln to enact and enforce sales taxation without representation for general revenue purposes in that area subjected to Lincoln's power to tax, but in which the residents are denied the right to vote for municipal officials.

29. Over a number of years, Lincoln has annexed various parcels of land through the use of "long-lasso" and "island" annexations, the result of which is a grossly disproportionate increase in the area of the police jurisdiction as compared to the area within the city limit.

30. A "long-lasso" annexation occurs when a municipality annexes a public roadway of some length in an effort to create contiguity with an outlying parcel of property that would not otherwise be contiguous with the existing municipal limits.

31. An "island" annexation is annexation of property that is not contiguous with existing city limits.

32.     By statute, Lincoln may exercise limited authority arbitrarily to refuse its police jurisdiction created by island annexations, but not otherwise.

33.     Lincoln exercised its statutory authority by first collecting sales taxes, then arbitrarily declining collection of sales taxes after October 13, 2015, in that portion of the police jurisdiction created by one of as many as 28 island annexations, but not the other island annexations, and by arbitrarily imposing sales taxes in the police jurisdiction established by all other island annexations.

34.     By use of long-lasso and island annexations, Lincoln can effect a ratio of property annexed to property included in the police jurisdiction of about 1:18,000, while, at the same time, utilizing the taxes collected from the larger police jurisdiction area to provide governmental services in the smaller annexed area and to its existing city limits.

35.     In its application of the police jurisdiction statutes, Lincoln has increased its jurisdictional area to 127 square miles, almost as large as the City of Atlanta, Georgia, which contains 132.4 square miles.

36.     A substantial portion of the residents of Lincoln's police jurisdiction are also residents of Talladega County, which has legal obligations to provide governmental services to them, including, for example, superintendence over public roads, bridges and ferries, and other services prescribed by law.

37.     The residents of Talladega County, including the Angles, who also reside in the police jurisdiction of Lincoln suffer direct financial injury by the tax scheme that allows Lincoln to impose taxation without representation on residents without a right to vote in elections for the municipal officials who impose the tax and appropriate the collected funds and the economic well-being of the residents is affected adversely.

A.      Lincoln's police department has a total of 17 police officers, about 1 officer for each 7.5 square miles of jurisdiction, inadequate staffing to provide 24-hour protection in the police jurisdiction;

B.      Lincoln's fire department currently has 29 full time employees, the same number it had in 2010 when its police jurisdiction extended only 1.5 miles from the city limit, rather than 3 miles from the city limit now, inadequate staffing to provide protection in the police jurisdiction and calls within the city limits have priority over calls within the police jurisdiction irrespective of severity or danger;

C.      Lincoln enforces its sales taxes without lawful authority at retail businesses in areas not included within its police jurisdiction and without affording businesses and their customers rights under the Taxpayers' Bill of Rights or following the Uniform Revenue Procedures Act.

D. The Angles pay 2.5% sales tax to Lincoln in its police jurisdiction and 1% to Talladega County on the same retail sales, rather than a total of only 2% to Talladega County if Lincoln's police jurisdiction sales tax is removed.

38. The tax scheme reduces the opportunity for economic growth in the affected area, limiting the economic opportunities of the residents therein and making residence in the affected area less desirable.

39. Talladega County suffers a direct injury because it provides governmental services to the areas at issue while Lincoln consumes a portion of the tax base otherwise available for that purpose.

40. Talladega County, by virtue of local Act No. 91-533, as amended by Act 2000-758, imposes sales taxes in those areas outside the corporate limits of the cities located in Talladega County at a rate of 2% except that the rate is 1% in the police jurisdiction of the cities.

41. As Lincoln applies the annexation, police jurisdiction and tax laws, the tax scheme allows Lincoln purposefully to limit Talladega County to a 1% sales tax rate in the police jurisdiction, rather than the full 2% sales tax, while Lincoln collects 2.5% sales tax in the police jurisdiction and avoids any obligation to provide governmental services to the police jurisdiction as a result of the sales taxes.

42.     The Angles join this action as residents of, and registered voters in, the Lincoln police jurisdiction, who pay sales taxes to Lincoln imposed in the police jurisdiction, but are without a right to vote, because of the location of their residence, for municipal officials with authority to impose the tax.

43.     Ms. Boozer and Mr. Martin join this action as residents of, and registered voters in, the area in which Lincoln is capable of repeating enforcement of its sales taxes after it has evaded review of the legality thereof.

## B. Causation

44. The plaintiffs challenge: [a] ALA. CODE §11-51-206 (1975) that allows municipal governments to impose sales taxes in areas where the residents are without a right, because of the location of their residence, to vote for the officials enacting the taxes and appropriating the collected funds and where the municipal government has no obligation to provide governmental services; and [b] the ordinance or resolution of the Lincoln municipal government in imposing sales taxes in areas where the residents are without a vote for the officials imposing the taxes and appropriating the collected funds and where it has no obligation to provide governmental services.

45. The described activity causes a real and actual harm to the Angles and to the residents of Talladega County who reside in Lincoln's police jurisdiction and imminent harm to Ms. Boozer and to Mr. Martin as it imposes sales taxation

without representation in the governing body on residents who are without a vote in the government that imposes the taxes.

46. The described activity causes a real and direct harm to Talladega County by preempting a portion of the tax base otherwise available to Talladega County to provide funds for the governmental services it supplies in the police jurisdiction, including [1] the Talladega Association of Volunteer Fire Departments; [2] contributions to the Honda project located in the Lincoln police jurisdiction; [3] the development of water lines for improved fire protection; [4] improving the supply and quality of the water in North Talladega County particularly in and around the Talladega Municipal Airport, which is in Lincoln's police jurisdiction; and [5] additional enforcement officers for the Talladega County Sheriff's Department to serve rural areas.

47. The injuries described are fairly traceable to the perpetuation of a taxing scheme that allows municipal governments to impose sales taxes on residents living outside their municipal limits who are without the right to vote for the officials who impose the taxes and appropriate the collected funds to provide governmental services within the municipal limits where the residents have a right to vote for their municipal officials.

## C. Redressability

48.    A judgment declaring that Lincoln may not collect sales taxes on transactions occurring in Lincoln's police jurisdiction where residents are without the right to vote for the officials imposing the sales taxes and appropriating the funds and enjoining that collection will reduce the total sales tax rate in Lincoln's police jurisdiction by 1.5% for the individual plaintiffs and will allow Talladega County to collect an additional 1% sales tax with which to provide governmental services to its residents, including those within police jurisdictions, and will redress the actual and imminent injury to the individual plaintiffs as well as to Talladega County.

## VI. Discrimination

49. The tax scheme perpetuated by Lincoln discriminates on its face and as it is applied against the disfavored residents of the police jurisdiction solely on the basis of their place of residence by denying them the fundamental right to vote for the public officials who may impose sales taxes on them and appropriate the collected funds without any obligation to provide governmental services in the area where the sales taxes are imposed or to the residents therein.

50. Other residents, differentiated from residents of the police jurisdiction only by their place of residence, are granted a right to vote on public officials who may impose sales taxes on them and appropriate the collected funds.

51. The municipal officials chosen by the favored residents may appropriate the tax revenue collected from the disfavored residents to provide governmental services to the favored residents.

52.     Strict scrutiny of the tax scheme described reveals that the residents of the police jurisdiction are denied a fundamental right to vote for those with the power to tax them and appropriate the funds collected.

53. No compelling governmental purpose exists for the discrimination described.

54. While a declaratory judgment is available in state court to determine the constitutionality of a statute, Plaintiffs have no plain, speedy and efficient remedy in the courts of Alabama to obtain a refund of the sales taxes overpaid.

55.     In order to receive a refund for sales taxes overpaid as a result of an invalid levy, taxpayers, such as the individual plaintiffs in this cause must, along with each individual merchant that collected the excess sales tax, file a joint petition for refund of the overpaid tax.

56.     If a merchant that collected excess sales taxes goes out of business or otherwise becomes unavailable, or if it simply declines to incur the expense and effort of joining in such a petition, taxpayers have no remedy in the courts of Alabama.

57. The availability of this remedy in the courts of Alabama is uncertain because the availability and the willingness of the required joint petitioner are uncertain and problematic.

58. The requirement that each individual merchant that collected overpaid sales taxes from a taxpayer be identified and solicited for cooperation is inefficient and imposes an unusual hardship on the taxpayer and an unnecessary expenditure of time and energy.

## VII. Damages

59. Talladega County demands judgment against Lincoln for an amount equal to sums collected in sales taxes by Lincoln in its police jurisdiction since January 1, 2013, to be applied according to the doctrine of *cy pres* for the indirect, prospective benefit of those subjected to the tax in the police jurisdiction as nearly as possible to the original intent: The provision of governmental services to the residents in the police jurisdiction.

60. The Angles demand judgment against Lincoln for the amount they paid in sales taxes for Lincoln in the police jurisdiction since January 1, 2013.

61. Ms. Boozer demands judgment against Lincoln for the amount she paid in sales taxes for Lincoln in the police jurisdiction after January 1, 2013, and before October 13, 2015.

62.     Mr. Martin demands judgment against Lincoln for the amount he paid in sales taxes for Lincoln in the police jurisdiction after January 1, 2013, and before October 13, 2015.

## VIII. Other Relief

63.     Plaintiffs ask the Court to declare that the provisions of §11-51-206 (1975) that allow Lincoln to impose sales taxes on those who are without a right to vote to elect the municipal officials imposing the taxes and appropriating the funds collected, violate the equal protection clause of U.S. CONST. amend. XIV and to enjoin the defendant from applying or enforcing them in the police jurisdiction of Lincoln.

## IX. Attorneys' Fees and Expenses

64. In this action to enforce a provision of 42 U.S.C. §1983, the plaintiffs have incurred reasonable attorneys' fees and expenses and request reimbursement thereof pursuant to 42 U.S.C. §1988(b).

WHEREFORE, plaintiffs ask the Court, after consideration of all the evidence, to declare that the provisions of ALA. CODE §11-51-206 (1975), insofar as they allow sales taxes in a geographical area where the residents may not vote to elect the officials imposing the taxes and appropriating the collected funds, violate the equal protection clause of U.S. CONST. amend. XIV, and to enjoin defendant from applying or enforcing the statute outside the corporate limits of Lincoln.

The Angles, Ms. Boozer and Mr. Martin demand judgment against Lincoln for the sales taxes they paid for Lincoln in the police jurisdiction on or after January 1, 2013.

Talladega County demands judgment against Lincoln for all other sums collected by Lincoln from sales taxes in the police jurisdiction since January 1, 2013, to be applied according to the doctrine of *cy pres* for the indirect, prospective benefit of those subjected to the sales taxes in the police jurisdiction as nearly as possible to the original intent: The provision of governmental services to the police jurisdiction.

Plaintiffs also ask the Court to determine a reasonable attorneys' fee for plaintiffs' counsel and tax that sum as costs against defendant.

Plaintiffs ask for such other and different relief to which they may be entitled.

### COUNT TWO

### I. Introduction

1.     This case involves a claim made pursuant to 42 U.S.C. §1983 by Robbie Angles and Lori Angles (hereinafter "the Angles"), that the City of Lincoln (hereinafter "Lincoln") deprived them of their property without the due process of law guaranteed them by U.S. CONST., amend. XIV, when it used its governmental power to delay the completion of certain improvements on their farm without a

predeprivation hearing and without a practical post-deprivation opportunity to be heard in order to impose on them certain building permits and business licenses not authorized under Alabama law.

2.      This action also claims reasonable attorneys' fees as a part of the costs pursuant to 42 U.S.C. §1988.

## II. Jurisdiction and Venue

3.      This Court has jurisdiction of the federal questions raised herein by virtue of 28 U.S.C. §§1331 and 1343(a)(3). Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III.   Parties

4.      Plaintiffs, **Robbie Angles** and **Lori Angles** (hereinafter "the Angles"), are resident citizens of, and registered voters in, Talladega County, Alabama, whose residence and farm lie in the police jurisdiction outside the limits of the City of Lincoln, where Lincoln, exercising its police powers, enforces building permits and business licenses.

5.      Defendant, **City of Lincoln**, is a municipal corporation located in Talladega County, Alabama, organized and existing under the provisions of ALA. CODE §11-40-1 (1975) that claims a population exceeding 6,000.

## IV. Facts

6.　　During 2013, the Angles decided to expand their farm operations on their property in the Lincoln police jurisdiction by adding new chicken houses to expand the farm's capacity to grow chickens.

7.　　The expansion was approaching completion in early January, 2014, when Lincoln claimed entitlement to a building permit for the chicken houses being completed on the property.

8.　　At the time that Lincoln contacted the Angles about a building permit, Lincoln had in force its Ordinance Number 2011-02 (hereinafter "the Ordinance"), effective November 9, 2010, because "it is in the public interest to monitor, control, and regulate the construction **within the city. . . ."** (emphasis supplied).

9.　　The Ordinance required "contractors, subcontractors and others performing work or services **in the city"** to purchase a license.

10.　　The Ordinance provided that "[a]ny person, firm, corporation, contractor, subcontractor who shall erect or attempt to erect a building, structure, barn, or any construction in which a permit is required, **located within the corporate limits**, without first obtaining a permit . . . shall be in violation of this ordinance." (emphasis supplied).

11.　　The construction on the Angles' property was not "within the city" or "within the corporate limits" of Lincoln.

12.     Nevertheless, Lincoln issued a "stop order" pursuant to a provision of the Ordinance to the Angles' contractor and subcontractors requiring a cessation of all activities on the site and a delay in the operation of the new facilities.

13.     The "stop order" was issued without any pre-deprivation opportunity for the Angles to be heard in opposition, or any practical opportunity for a post-deprivation hearing or other mechanism for amelioration and without quantifying the amounts it claimed to be necessary for a release.

14.     On demand of Lincoln, the Angles paid $454.27 on February 5, 2014, and $4,193.62 on February 27, 2014, to obtain a release of the "stop order."

15.     The Angles were deprived of $4,647.89 in payments to Lincoln for building permit fees they did not owe, and lost the use of the improvements to their property causing lost income of $35,932.39 arising from the delay in the availability of the new construction for their business from the first week of January, 2014, to February 27, 2014.

16.     In this action to enforce a provision of 42 U.S.C. §1983, the plaintiffs have incurred reasonable attorneys' fees and expenses and request reimbursement thereof pursuant to 42 U.S.C. §1988(b).

### V. Request for Relief

WHEREFORE, the Angles demand judgment against Lincoln for FORTY-THOUSAND FIVE HUNDRED EIGHTY and 28/100 DOLLARS ($40,580.28)

plus costs. Plaintiffs also request that the Court include in the costs of this case a reasonable fee and expenses for the attorneys for the plaintiffs.

*/s/ Barry D. Vaughn*

BARRY D. VAUGHN, Esq.
Bar No. ASB 8520 N76B
PROCTOR & VAUGHN, LLC
201 North Norton Avenue
Sylacauga, AL  35150-2455
256/249-8527: Fax: 256/249-7123
BDV@PandV.net

*/s/ James M. Sizemore, Jr.*

JAMES M. SIZEMORE, JR., Esq.
Bar No. ASB 8513 E68J
ATTORNEY AT LAW
6732 Highway 63, South
Alexander City, AL  35010-6170
256/409-1985: Fax: 256/409-1987
JamesMSizemore1@Gmail.com

## JURY DEMAND

Please take notice that the plaintiffs demand a trial by jury of all the issues in this cause.

*/s/ James M. Sizemore, Jr.*

JAMES M. SIZEMORE, JR.
ATTORNEY AT LAW

# CERTIFICATE OF SERVICE

This is to certify that, on this the 10th day of February, 2016, I served a copy of the foregoing Amended Complaint via the CM/ECF system which will effect service electronically on:

James W. Porter, II, Esq.
Richard Warren Kenney, Esq.
PORTER, PORTER & HASSINGER, P.C.
Post Office Box 128
Birmingham, AL 35201-0128
205/322-1744; Fax: 205/322-1750
JWPorterII@PPHlaw.net
WKenney@PPHlaw.net

Bryan Taylor, Esq.
Richard Cater, Esq.
ALABAMA DEPARTMENT OF FINANCE
600 Dexter Avenue, Ste. E-306
Montgomery, AL 36130
334/242-4220
Bryan.Taylor@finance.alabama.gov
Richard.Cater@finance.alabama.gov

James W. Davis, Esq.
Laura E. Howell, Esq.
ATTORNEY GENERAL'S OFFICE
501 Washington Avenue
Montgomery, AL 36130-0152
334/242-7300; Fax: 334/353-8440
JimDavis@AGO.state.al.us
LHowell@AGO.state.al.us

David E. Avery, III, Esq.
Christy.Edwards, Esq.
Alabama Department of Revenue
Post Office Box 320001
Montgomery, AL 36132-0001
334/242-9690
David.Avery2@revenue.alabama.gov
Christy.Edwards@revenue.alabama.gov

*/s/ James M. Sizemore, Jr.*
JAMES M. SIZEMORE, JR.
Of Counsel