FILED
2016 Sep-27  AM 11:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **TALLADEGA COUNTY** | ] |
| **COMMISSION, et al.,** | ] |
| | ] |
| **Plaintiffs,** | ] |
| | ] |
| **v.** | ]    **CASE NO.: 1:15-cv-2337-KOB** |
| | ] |
| **CITY OF LINCOLN, et al.,** | ] |
| | ] |
| **Defendants.** | ] |
| | ] |

**MEMORANDUM OPINION**

Nothing is certain in this world except death, taxes, and disputes about taxes.

The Talladega County Commission and four individual Plaintiffs filed an amended complaint against the City of Lincoln, alleging under § 1983 that Lincoln subjected residents within its police jurisdiction to "taxation without representation" and caused Talladega County to lose sales taxes revenue. Additionally, two of the individual Plaintiffs allege under § 1983 that Lincoln deprived them of property without due process of law when it issued a stop order that delayed the construction of chicken houses on their farm. Now Lincoln–the only remaining defendant–has filed a motion to dismiss the amended complaint. (Doc. 21). Because the court lacks subject-matter jurisdiction over the first count of the action and the second count fails to state a claim upon which relief can be granted, the court **GRANTS** Lincoln's motion.

**I.      STANDARD OF REVIEW**

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The court "must have at least one of three types of subject

matter jurisdiction to entertain a cause of action: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. 1332(a)." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997). Under Rule 12(b)(1), a party may assert a defense that the court lacks subject-matter jurisdiction over the action. If a court determines it is without jurisdiction, "the court is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009).

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint need only state "a plausible claim for relief" to survive a motion to dismiss. *Id*. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim

that is plausible, the claim must be dismissed.  *Id.*

## II.   STATEMENT OF FACTS

Lincoln is a municipal corporation located in Talladega County, Alabama. Because Lincoln's population exceeds 6,000, its police jurisdiction extends three miles past its corporate limits. *See* Ala. Code. § 11-51-206 (1975). In October of 2007, Lincoln imposed a five-percent sales tax within its city limits and a two-and-a-half-percent sales tax within its police jurisdiction.

Talladega County Commission is the governing body of Talladega County, Alabama. The County imposes a two-percent sales taxes in those areas outside the corporate limits of the cities located in Talladega County and a one-percent sales tax in the areas within a municipality's police jurisdiction. Because the County only imposes a one-percent sales tax in the areas within Lincoln's police jurisdiction, Talladega County claims the State of Alabama's annexation, police jurisdiction, and tax laws permit Lincoln to "purposefully limit" Talladega County to collecting a one-percent sales tax in Lincoln's police jurisdiction while Lincoln collects a two-and-a-half-percent sales tax in its police jurisdiction without an obligation to provide services to the area. Additionally, a substantial portion of residents within Lincoln's police jurisdiction are also residents of Talladega County. The County provides governmental services to residents in that area.

Along with Talladega County, four individual plaintiffs have sued Lincoln. Robbie Angles and Lori Angles are residents and registered voters in Talladega County. The Angleses live on a farm outside of Lincoln's corporate limits but within Lincoln's police jurisdiction. Because the Angleses do not reside within Lincoln's corporate limits, they are not permitted to vote in elections for Lincoln's city council. The Angleses claim they pay sales taxes to Lincoln on

transactions within the police jurisdiction but receive no services from Lincoln.

Plaintiffs Angela Boozer and Thomas Martin are residents and registered voters in Talladega County. Mr. Boozer and Ms. Martin reside in an area known as Lincoln Harbor, which is outside Lincoln's corporate limits. Lincoln "elect[ed] not to exercise any jurisdiction or authority, including the assessment of any tax" over Lincoln Harbor on October 13, 2015. (Doc. 21-3). However, prior to that time Lincoln imposed a sales tax on transactions conducted in the area. Like the Angles, Boozer and Martin also claim that they received no governmental services from the sales taxes Lincoln imposed.

Lincoln's tax scheme does not violate state law. Alabama Code § 11-40-10(a)(1) provides that "[t]he police jurisdiction in municipalities having 6,000 or more inhabitants shall cover all adjoining territory within three miles of the corporate limits . . .." Ala. Code § 11-40-10(a)(1). As a municipality, the City may impose a sales tax in the areas within its police jurisdiction. *See* Ala. Code § 11-51-206. The statute provides that:

> The council or other governing body shall have the authority to levy and assess by ordinance within the police jurisdiction of any municipality or town all taxes authorized by this article; provided, that the levy and assessment shall not exceed one-half the amount levied and assessed for like businesses, sales or uses conducted within the corporate limits, fees and penalties excluded.

*Id.* Further, Alabama law provides that municipalities may levy sales tax alongside the state's assessment of sales tax. *See* Ala. Code § 11-51-200. Lincoln exercised its authority to levy a sales tax in areas within its police jurisdiction but outside its corporate limits.

In addition to the claims made by the other Plaintiffs, the Angleses also allege in Count II of the amended complaint that Lincoln deprived them of property without due process of law when it delayed the completion of construction of chicken houses on their farm. In early January

4

of 2014, when the building project was approaching completion, Lincoln notified the Angleses that they were required to have a permit to engage in construction on the property. Lincoln issued a stop order that delayed completion of the project. The Angleses' construction project was not within Lincoln's corporate limits. Lincoln's building permit ordinance did not explicitly state that it applied within its police jurisdiction. The Angleses were not afforded any opportunity to oppose Lincoln's stop work order before it was issued.

The Angleses paid $453.27 on February 5, 2014 and $4,193.62 on February 27, 2014 to Lincoln to obtain a release from the stop-work order. As a result of the delay, the Angleses claim they suffered $35,932.39 in lost business income.

## III.   DISCUSSION

The Plaintiffs' filed a two-count amended complaint against Lincoln. In Count I, the Talladega County Commission and the individual Plaintiffs assert a claim under 42 U.S.C. § 1983 against Lincoln, contending that its tax scheme violates the Equal Protection Clause of the Fourteenth Amendment. Additionally, Plaintiffs Robbie Angles and Lori Angles assert another § 1983 claim in Count II, alleging that Lincoln deprived them of property without due process of law when it delayed the completion of construction of the chicken homes on their farm. Neither claim can survive Lincoln's motion to dismiss.

### A.   Count I: Challenge to Lincoln's Power to Collect Sales Taxes Within its Police Jurisdiction

The court will first address whether it has jurisdiction over the Plaintiffs's claims. Lincoln argues that "every single claim of every single Plaintiff must be dismissed based upon the jurisdictional bar contained in 28 U.S.C. § 1341." (Doc. 21-1 at 9). The statute, known as the Tax

Injunction Act, provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Importantly, the Tax Injunction Act "does not *confer* jurisdiction, but instead *limits* jurisdiction that might otherwise exist." *Osceola v. Fla. Dep't of Revenue*, 893 F.2d 1231, 1232 (11th Cir. 1990) (emphasis added). The act bars suits for declaratory relief as well as injunctions. *Id.* at 1233 (citing *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943)).[1]

Given the broad sweep of the statute, this case would appear open and shut. The Tax Injunction Act bars federal courts from granting declaratory relief against administration of state taxes. In the Plaintiffs's first count, they challenge the administration of a tax scheme enabled by state law. Therefore, the Tax Injunction Act bars the Plaintiffs's claim. However, the Plaintiffs resist this simple syllogism with two arguments against the Tax Injunction Act's applicability to their claims.

First, the Plaintiffs assert that "the most compelling precedent favoring the [c]ourt's jurisdiction is the *Holt* case itself." (Doc. 24 at 12). The Plaintiffs's theory is that the United States Supreme Court in *Holt Civic Club v. City of Tuscaloosa* expressly determined that the district court had jurisdiction to resolve the issues in that case, and the "*Holt* decision controls the jurisdictional issue in this case." (Doc. 24 at 13). The Plaintiffs reason that, because the Tax Injunction Act did not bar the plaintiffs in *Holt*, it should not restrain the Plaintiffs in this case as

---

[1]An even more stringent limitation on federal jurisdiction exists to hear damages actions that allege an illegal tax scheme. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 107 (1981) ("[W]e decide today that the principle of comity bars federal courts from granting damages relief in such cases.")

"[p]rocedurally, this case is almost identical." (Doc. 24 at 13).

But *Holt* and the Plaintiff's claims are distinct in a critical way. *Holt* did not involve a challenge to Tuscaloosa's imposition of a *tax* on Holt residents, which is why the Tax Injunction Act was never mentioned by the Court. *See Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 67 (1978). In *Holt*, the residents of the unincorporated community of Holt, Alabama located within the police jurisdiction of Tuscaloosa, Alabama filed a state-wide class action challenging the constitutionality of Tuscaloosa's extraterritorial exercise of *police powers* over Holt residents when Holt residents were not allowed to vote in Tuscaloosa elections. *Id.* at 61–62. The Holt residents were not challenging Tuscaloosa's levy of sales taxes on Holt residents. *Id.* at 77. Tuscaloosa did not tax the residents of Holt. *Id.* Instead, the Holt residents were challenging the subjugation of Holt to Tuscaloosa police power and sanitary regulations. *See id.* at 67 ("Appellants focus their equal protection attack on . . . the statute fixing the limits of municipal police jurisdiction and giving extraterritorial effect to municipal police and sanitary ordinances."). The plaintiffs were not challenging Tuscaloosa's ability to *tax* but rather its power to *regulate*.[2] Thus, *Holt* does not support this court's exercise of jurisdiction in this case that specifically challenges the tax imposed by Lincoln.

The Plaintiffs's second argument is that the Tax Injunction Act is inapplicable because they are not afforded a plain, speedy, and efficient remedy to challenge the tax by the state. A state remedy is plain, speedy, and efficient if it provides the taxpayer with a full hearing and

---

[2]The Plaintiffs concede as much in their brief's conclusion when attempting to distinguish *Holt*'s substantive holding from this case: "This case is factually different from *Holt Civic Club* . . . [which] dealt with exercise of Lincoln's police power. The sales tax at issue here is not regulatory, but is instead a revenue-generating tax." (Doc. 24 at 27) (citations and emphasis omitted).

judicial determination at which the taxpayer may raise constitutional objections to the tax. *See Melof v. Hunt*, 718 F. Supp. 877, 880 (M.D. Ala. 1989) (citing *California v. Grace Brethren Church*, 457 U.S. 393, 411–12 (1982)). The remedy is not required to "be the best remedy available or even equal to or better than the remedy which might be available in the federal courts." *Kelly v. Ala. Dept. of Rev.*, 638 Fed. Appx. 884, 890 (11th Cir. 2016) (quoting *Bland v. McHann*, 463 F.2d 21, 29 (5th Cir 1972); *see also. Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 587 (1995) ("States are afforded great flexibility in satisfying the requirements of due process in the field of taxation."). The "plain, speedy, and efficient" exception is construed narrowly; the burden is on the taxpayer to demonstrate that it applies. *See Amos v. Glynn Cty. Bd. of Tax Assessors*, 347 F.3d 1249, 1255–56 (11th Cir. 2003).

 The Plaintiffs contend that Alabama's requirement that a merchant and a buyer file a joint challenge to collection of a sales tax renders the remedy provided by the state inadequate because if a merchant goes out of business or refuses to cooperate with a buyer's attempt to seek a refund, the buyer cannot seek administrative review under the state's procedure. *See* Ala. Code. § 40-2A-1 (1975).

Alabama law provides remedies that are plain, speedy, and efficient. Even if the requirement of a joint petition somehow rendered the Plaintiffs's administrative appeals impracticable, the Plaintiffs were still free to seek judicial review of their case in Alabama state court by filing a declaratory judgement action. *See Kelly*, 638 Fed. Appx. at 891 (finding Alabama's Declaratory Judgement Act provides a plain, speedy, and efficient remedy to challenge state tax administration); *see also Gibbs v. Cochran*, 198 So. 2d 607, 608 (Ala. 1967) ("We have said that controversies touching the legality of acts of public officials or public

8

agencies challenged by parties whose interests are adversely affected is one of the favored fields for declaratory judgment.").

Alabama law provides the Plaintiffs with remedies that give them a meaningful opportunity to present their legal objections to the tax. In a declaratory judgement action, the Plaintiffs's could have presented their constitutional concerns about Lincoln collecting sales tax from transactions within its police jurisdiction but outside of its city limits to a court. If the Plaintiffs were unsatisfied by the decision of lower Alabama courts, they could have presented their arguments to the Alabama Supreme Court and then, if the Alabama Supreme Court did not find in their favor, to the United States Supreme Court. *See Rosewell v. LaSalle Nat. Bank,* 450 U.S. 503, 512–15 (1981) (finding that such a procedure satisfied the requirement of providing taxpayers a plain, speedy, and efficient remedy). In doing so, the Plaintiffs would have received a "full hearing and judicial determination." *See id.* at 514.

The Plaintiffs argue that a declaratory judgment action was available to the taxpayers in *Holt*, and yet the federal court properly exercised jurisdiction over that action. However, as previously discussed, *Holt* did not involve a challenge to administration of a state tax that would have brought the case within the orbit of the Tax Injunction Act.

The Plaintiffs also argue that Alabama has foreclosed declaratory relief because it requires compliance with the state's administrative scheme to sue for a refund. However, the Plaintiffs were still free to challenge the *validity* of the tax in state court in a declaratory judgment action. A state is free to place restrictions on a taxpayer's ability to sue for a refund, and Alabama's restrictions have previously been upheld by the Eleventh Circuit. *See Kelly*, 638 Fed. Appx at 891 (noting that a "state scheme requiring a taxpayer to pay the contested tax and then

9

seek a refund through state administrative and judicial procedures was deemed sufficient by the Supreme Court"). Here, the Plaintiffs do not seek a refund but challenge the validity of the tax itself–a dispute within the "favored field for declaratory judgment." *See Gibbs,* 198 So. 2d at 608.

Further, the burden is on the taxpayer to demonstrate the inadequacy of the state's remedy. *See Amos*, 347 F.3d at 1255–56. The Plaintiffs do not carry that burden. The Plaintiffs *speculate* about the effect of Alabama's procedural requirements but cannot *prove* anything, even if every factual allegation contained in the complaint is assumed to be true. The Plaintiffs do not allege that they have been unable to file a request for a refund with the state because of uncooperative merchants.

As a matter of comity, when a plaintiff has not "availed itself of the administrative remedies afforded" by state statute, federal jurisdiction is not appropriate. *See First Nat. Bank of Greeley v. Bd. of Comm'rs*, 264 U.S. 450, 456 (1924); *see also Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 137 (1981) (Brennan, J., concurring) ("Where administrative remedies are a precondition to suit for monetary relief in state court . . . those remedies should be deemed a precondition to suit in federal court as well."). Requiring compliance with state procedures ensures that a federal court is not required to speculate about what relief is available under state law but may base its judgment on a real record. Given the sparse evidence in support of the state's remedy being inadequate, the court does not find a sufficient showing to overcome the "broad jurisdictional barrier" of the Tax Injunction Act. *I.L. v. Alabama*, 739 F.3d 1273, 1282 (11th Cir. 2014).

Because the court lacks subject-matter jurisdiction over the first count of the complaint, it

**GRANTS** Lincoln Motion to Dismiss Count I of the amended complaint **WITHOUT PREJUDICE**.

      **B.**      **Count II**: **Procedural Due Process Challenge to Lincoln's Stop Order**

      Lincoln argues that all of the Plaintiffs's claims are barred from being heard in federal court by the Tax Injunction Act. However, the Plaintiffs's second count does not attempt to restrain collection of a state tax. Rather, the Plaintiffs allege that Lincoln deprived them of property without due process when it issued an order to stop construction on their property. Accordingly, the Plaintiffs's claims arise under federal law because they invoke the Equal Protection Clause of the Fourteenth Amendment. Because the court has jurisdiction over this action under 28 U.S.C. § 1331, the court proceeds to consider whether the Plaintiffs have stated a claim upon which this court can grant relief.

      The Plaintiffs contend that Lincoln's building code ordinance had no effect in areas that were outside Lincoln limits but within the police jurisdiction. The Plaintiffs's argument centers on the fact that Lincoln's ordinance at the time did not say that it applied within its police jurisdiction. However, Alabama law *presumes* city ordinances to apply within a municipality's police jurisdiction. *See* Ala. Code. § 11-40-10 (1975).[3] The ordinance's silence does not limit its application. Lincoln was in full compliance with Alabama state law in extending its building permit regulations to its police jurisdiction. *See City of Robertsdale v. Baldwin Cty.*, 538 So. 2d 33 (Ala. Civ. App. 1988) (finding a building permit ordinance to be a "police regulation" for

---

      [3]§ 11-40-10 has been amended twice since Lincoln issued a stop order to the Plaintiffs to halt their construction. At the time the order was issued, the statute read: "Ordinances of a city or town enforcing police or sanitary regulations and prescribing fines and penalties for violations thereof shall have force and effect in the limits of the city or town *and in the police jurisdiction* thereof and on any property or rights-of-way belonging to the city or town." (emphasis added).

purposes of § 11-40-10). Therefore, Lincoln did not violate the Plaintiffs's rights by failing to properly follow state law.

The Plaintiffs also argue they were denied due process to challenge Lincoln's stop order. The Plaintiffs concede that they had an opportunity for a post-deprivation hearing challenging Lincoln's order but contend that such a hearing was constitutionally inadequate. Rather, the Plaintiffs argue that because Lincoln's order directly affected their livelihood, they were entitled to a pre-deprivation hearing.

First, Lincoln does not appear to have deprived the Plaintiffs of a protected interest. Put simply, the Plaintiffs do not have a property interest in a licence they never obtained, and the Plaintiffs do not have a liberty or property interest in building without a permit. *See Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("[Property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."). Without a protected interest, the Plaintiffs do not have a procedural due process claim.

Even if the court presumes an interest, the Plaintiffs fail to show that the remedies provided by Lincoln or under state law were inadequate. This failure proves fatal. *See Rymer v. Douglas Cty.*, 764 F.2d 796, 803 (11th Cir. 1985) ("[A] plaintiff cannot bring a property claim against a governmental body if the governmental body being sued provides a meaningful post-deprivation remedy."); *Flagship Lake Cty. Dev. Number 5 v. City of Mascotte*, 559 Fed. App'x 811, 815 (11th Cir. 2014) ("Again and again, this Court has repeated the basic rule that a procedural due process claim can exist only if no adequate state remedies are available."). The Plaintiffs have remedies under state law; they just elected not to exercise them.

12

The Plaintiffs could file a declaratory judgment action or petition for a writ of mandamus, both of which are remedies that adequately protected their interests. *See Kelly*, 638 Fed. Appx. at 891 (finding declaratory judgement adequate); *Cotton v. Jackson*, 216 F.3d 1328, 1332–33 (11th Cir. 2000) (finding mandamus adequate). The Plaintiffs could have sought to recover the damages now they seek in the remedies provided by the state. The Plaintiffs may have failed to take advantage of those remedies, but they may not now "rely on that failure to claim that the state deprived [them] of procedural due process." *Cotton,* 216 F.3d at 1331.

In support of the Plaintiffs's claim that they were entitled to a pre-deprivation hearing, they cite to *Bell v. Burson,* 402 U.S. 535 (1971), a case where the Supreme Court held that pre-deprivation hearing was required to suspend a driver's licence. However, the circumstances of *Bell* and this case are entirely different. In *Bell*, the plaintiff had previously obtained a driver's license–an interest–the state then sought to revoke. Here, the Plaintiffs did not obtain a building permit, which is the very reason why Lincoln issued the stop order. The Plaintiffs would have required Lincoln to notify them that it intended to order them to stop building without a permit. This reasoning would require an officer who stops a person who is driving without a licence to provide notice and a hearing before preventing him from driving further down the road.

Accordingly, a pre-deprivation hearing is not required in the case of an "interim suspension." *See Barry v. Barchi*, 443 U.S. 55, 64 (1979) (upholding summary suspension of a horse trainer's license without pre-suspension hearing). The Plaintiffs invoke misplaced reliance on precedents where the deprivation was final. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) (noting that a hearing is "required before the owner is *finally* deprived of a protected property interest") (emphasis added).

13

A stop order functions like an interim suspension of a license; it is not a permanent deprivation of a right but rather a temporary restriction. Therefore, even assuming that the Plaintiffs had an interest that warranted due process protection, Lincoln accorded the Plaintiffs sufficient due process in the form of a post-depravation hearing.

Because the Plaintiffs's second count fails to state a claim upon which the court can grant relief, the court **GRANTS** Lincoln's Motion to Dismiss Count II of the amended complaint **WITHOUT PREJUDICE**.

IV.     **CONCLUSION**

The court **GRANTS** the Lincoln's Motion to Dismiss the Plaintiffs's first count **WITHOUT PREJUDICE** and the second count **WITHOUT PREJUDICE**. (Doc. 21).

**DONE** this the 27th Day of September, 2016.

_____

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE